1  COOLEY LLP
   MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2  MATTHEW D. BROWN (196972) (brownmd@cooley.com)
   KYLE C. WONG (224021) (kwong@cooley.com)
3  KAREN L. BURHANS (303290) (kburhans@cooley.com)
   101 California Street, 5th Floor
4  San Francisco, CA  94111-5800
   Telephone:    (415) 693-2000
5  Facsimile:    (415) 693-2222

6  Attorneys for Defendant
   TWITTER, INC.

7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12  JASON PARKER, individually and on behalf        Case No.  3:16-CV-04884 WHA
    of all others similarly situated,
13                                                   **DEFENDANT TWITTER, INC.'S MOTION
                    Plaintiff,                       TO DISMISS PLAINTIFF'S COMPLAINT**
14
           v.                                        **FED. R. CIV. P. 12(b)(1), 12(b)(6)**
15
    HEY, INC., a Delaware corporation, and          Date:       December 8, 2016
16  TWITTER, INC., a Delaware corporation,          Time:       8:00 a.m.
                                                     Courtroom:  8 - 19th Floor
17                  Defendants.                                  450 Golden Gate Avenue
                                                                 San Francisco, CA 94102
18
                                                     Judge:      The Hon. William Alsup
19                                                   Trial Date: Not yet set

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

STATEMENT OF RELIEF SOUGHT ..................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 2

I.    INTRODUCTION ................................................................................................. 2

II.   STATEMENT OF FACTS ..................................................................................... 3

    A.   Twitter ...................................................................................................... 3

    B.   Twitter's Terms of Service and Privacy Policy .......................................... 4

    C.   Hey and Its App "Famous: The Celebrity Twitter" ..................................... 5

    D.   Plaintiff's Complaint ................................................................................. 6

III.  ARGUMENT ....................................................................................................... 7

    A.   Plaintiff Lacks Article III Standing ............................................................ 7

    B.   Plaintiff's Complaint Fails to State a Claim for Relief Against Twitter .......... 9

        1.   Communications Decency Act § 230 Precludes Plaintiff's Claim ............................................................................................. 9

        2.   Plaintiff Consented to Twitter's Disclosure of His Information to Hey ..................................................................................... 13

        3.   The First Amendment Bars Plaintiff's Right-of-Publicity Claim ...... 15

            a.   Plaintiff's Claim Infringes on Constitutionally Protected Speech ..................................................................... 15

            b.   There is No Compelling Interest in Regulating the Speech at Issue Here ..................................................... 16

    C.   Plaintiff's Claim Should Be Dismissed With Prejudice .............................. 18

IV.   CONCLUSION .................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Badie v. Bank of Am.*,
   67 Cal. App. 4th 779 (1998) ...................................................................................................13

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) .........................................................................................10, 11

*Beckman v. Match.com*,
   No. 2:13-CV-97 JCM NJK, 2013 WL 2355512 (D. Nev. May 29, 2013) ...................................12

*Bell v. Birmingham Broad. Co.*,
   266 Ala. 266 (1957) .............................................................................................................13

*Bernard v. Donat*,
   No. 11-cv-03414-RMW, 2012 WL 525533 (N.D. Cal. Feb. 16, 2012) .....................................16

*Bland v. Roberts*,
   730 F.3d 368 (4th Cir. 2013), *as amended* (Sept. 23, 2013) ..............................................15

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983) ...............................................................................................................16

*Brown v. Entm't Merchs. Ass'n*,
   564 U.S. 786 (2011) .............................................................................................................15

*C.B.C. Distribution & Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*,
   505 F.3d 818 (8th Cir. 2007) .........................................................................................15, 17

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) .......................................................................................10, 12

*Daly v. Viacom, Inc.*,
   238 F. Supp. 2d 1118 (N.D. Cal. 2002) ...............................................................................18

*Dex Media W., Inc. v. City of Seattle*,
   696 F.3d 952 (9th Cir. 2012) ...............................................................................................16

*Doe v. MySpace, Inc.*,
   528 F.3d 413 (5th Cir. 2008) ...............................................................................................11

*Doe II v. MySpace Inc.*,
   175 Cal. App. 4th 561 (2009) ...............................................................................................11

*Esch v. Universal Pictures Co.*,
   No. 6:09-CV-02258-JEO, 2010 WL 5600989 (N.D. Ala. Nov. 2, 2010) ...................................18

LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Evans v. Hewlett-Packard Co.*,
No. C 13-02477 WHA, 2013 WL 5594717 (N.D. Cal. Oct. 10, 2013) ........................9, 10, 11, 12

*In re Facebook Biometric Info. Privacy Litig.*,
No. 15-CV-03747-JD, 2016 WL 2593853 (N.D. Cal. May 5, 2016) ...........................................13

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ............................................................................................10, 12

*Fields v. Twitter, Inc.*,
No. 16-CV-00213-WHO, 2016 WL 4205687 (N.D. Cal. Aug. 10, 2016) ...................................10

*Free Kick Master LLC v. Apple Inc.*,
140 F. Supp. 3d 975 (N.D. Cal. 2015) ....................................................................................12

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
528 U.S. 167 (2000)...............................................................................................................7, 9

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .....................................................................................14

*In re Gilead Scis. Litig., Inc.*,
536 F.3d 1049 (9th Cir. 2008) .............................................................................................9, 14

*Gubala v. Time Warner Cable, Inc.*,
No. 15-CV-1078-PP, 2016 WL 3390415 (E.D. Wis. June 17, 2016) ...........................................8

*Hoffman v. Capital Cities/ABC, Inc.*,
255 F.3d 1180 (2001).............................................................................................................15

*Jane Doe No. 1 v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016).....................................................................................................10

*Joude v. WordPress Found.*,
No. C 14-01656 LB, 2014 WL 3107441 (N.D. Cal. July 3, 2014)...............................................10

*Lancaster v. Alphabet Inc.*,
No. 15-CV-05299-HSG, 2016 WL 3648608 (N.D. Cal. July 8, 2016) ........................................18

*Lucas v. Hertz Corp.*,
875 F. Supp. 2d 991 (N.D. Cal. 2012) .....................................................................................14

*McCollough v. Smarte Carte, Inc.*,
No. 16 C 03777, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016)......................................................7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

DEF. TWITTER, INC.'S MOT. TO DISMISS
NO. 3:16-CV-04884 WHA

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*McGlamry v. Transmeta Corp.*,
No. C 04-02475 WHA, 2005 WL 2216951 (N.D. Cal. July 25, 2005) .......................18

*Minnifield v. Ashcraft*,
903 So. 2d 818 (Ala. Civ. App. 2004) ...................................................................8, 13

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .........................................................................................9

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
724 F.3d 1268 (9th Cir. 2013) .....................................................................................15

*Perfect 10, Inc. v. CCBill LLC*,
488 F.3d 1102 (9th Cir. 2007) .....................................................................................10

*Roberts v. Corrothers*,
812 F.2d 1173 (9th Cir. 1987) .......................................................................................9

*Sarver v. Chartier*,
813 F.3d 891 (9th Cir. 2016) ...........................................................................15, 16, 18

*Saul v. United States*,
928 F.2d 829 (9th Cir. 1991) .......................................................................................18

*Schmier v. U.S. Court of Appeals for Ninth Circuit*,
279 F.3d 817 (9th Cir. 2002) .......................................................................................18

*Slaught v. Bencomo Roofing Co.*,
25 Cal. App. 4th 744 (1994) ........................................................................................14

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016).......................................................................................2, 7, 8, 9

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
782 F. Supp. 2d 1059 (E.D. Cal. 2011)..........................................................................9

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)..........................................................................................................7

*Supply Pro Sorbents, LLC v. Ringcentral, Inc.*,
2016 WL 5870111, at *3 (N.D. Cal., 2016) ...................................................................7

*United States v. Cathcart*,
No. C 07-4762 PJH, 2009 WL 3103652 (N.D. Cal. Sept. 22, 2009)...............................9

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

DEF. TWITTER, INC.'S MOT. TO DISMISS
NO. 3:16-CV-04884 WHA

# TABLE OF AUTHORITIES
**(continued)**

Page(s)

*Vieira v. Woodford*,
No. C 00-0043 PJH, 2002 WL 1226852 (N.D. Cal. May 30, 2002) ................................9

*Vijay v. Twentieth Century Fox Film Corp.*,
No. CV 14-5404 RSWL EX, 2014 WL 5460585 (C.D. Cal. Oct. 27, 2014) ..............................18

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ........................................................................7

*Wingo v. Twitter, Inc.*,
No. 14-2643, 2014 WL 7013826 (W.D. Tenn. Dec. 12, 2014) ....................................13

*Zacchini v. Scripps-Howard Broad.*,
433 U.S. 562 (1977)..............................................................................15, 17

**Statutes**

47 U.S.C. § 230................................................................................... *passim*

Ala. Code 1975 § 6-5-772........................................................................ *passim*

**Other Authorities**

Federal Rules of Civil Procedure
12(b)(1) ...........................................................................................7
12(b)(6) ...........................................................................................9

Restatement (Second) of Torts § 652C (1977) ...........................................................8, 17

### NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on December 8, 2016, at 8:00 a.m., defendant Twitter, Inc. ("Twitter") will and hereby does move to dismiss Plaintiff's Complaint.  Twitter's Motion to Dismiss is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Karen L. Burhans and Ricardo Castro in support thereof and all exhibits to those declarations, the Request for Consideration of Documents Incorporated into Plaintiff's Complaint and, in the Alternative, for Judicial Notice in Support of Defendant's Motion to Dismiss Plaintiff's Complaint, all papers on file in this matter, and such other points, authorities, and evidence as may be presented to the Court at the time of the hearing or otherwise.

### STATEMENT OF RELIEF SOUGHT

Twitter seeks an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) dismissing with prejudice Plaintiff's claims against Twitter for lack of standing and for failure to state a claim upon which relief can be granted.

### STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiff has suffered a concrete injury in fact under Article III where he does not allege any harm, economic or otherwise, for the mere violation of a statute enacted to protect commercial interests.

2.      Whether the Communications Decency Act, 47 U.S.C. § 230, bars Plaintiff's cause of action, which seeks to hold Twitter liable as a publisher for content created by a third party;

3.      Whether Plaintiff has failed to state a claim under the Alabama right-of-publicity statute, Ala. Code 1975 § 6-5-772, (the "Alabama Right of Publicity Act" or the "Act") because he consented to the use of his publicly available Twitter information.

4.      Whether allowing Plaintiff's cause of action to proceed in this case would violate the First Amendment.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The Complaint seeks to hold Twitter liable for the acts of co-Defendant Hey, Inc. ("Hey"), which allegedly used Plaintiff Jason Parker's ("Plaintiff" or "Parker") name and photograph in its mobile application, Famous: The Celebrity Twitter ("Famous").  Plaintiff, an Alabama resident, claims that Hey accessed Twitter's public application program interface ("API"), which permits third-party developers to access publicly available Twitter content, and as a result of Hey's access, Twitter violated the Alabama Right of Publicity Act.

Plaintiff's theory of liability against Twitter is premised not on Twitter's affirmative actions, but on Hey's use of Twitter's API, which allegedly resulted in the inclusion of Plaintiff's name and photograph in Hey's mobile app without Plaintiff's knowledge or consent.  Plaintiff's Complaint elides numerous fundamental and fatal flaws in his claim, including his lack of standing and his consent to Twitter's alleged misconduct.  For the reasons discussed below, this Court should dismiss Plaintiff's claim against Twitter with prejudice.

First, Plaintiff's Complaint tacitly concedes that he has suffered no concrete harm whatsoever. He does not allege that he lost any money or suffered any other economic injury.  Nor does he claim that he lost an opportunity to monetize his persona or that Twitter's actions diminished the value of his name in any way.  Instead, he relies entirely on the mere allegation of a statutory violation.  But as the Supreme Court held last term in *Spokeo v. Robins*, "Article III standing requires a concrete injury even in the context of a statutory violation."  Here, Plaintiff has alleged no such thing and his claim should be dismissed.

Second, Plaintiff seeks to hold Twitter liable for the publication in Hey's app of content created by a third party.   The Communications Decency Act, 47 U.S.C. § 230 ("CDA" or "CDA § 230") preempts any state law claim that treats an interactive computer service, such as Twitter, as a publisher of content generated by another information content provider.  The CDA thus bars Plaintiff's claim.

Third, Twitter's Terms of Service and incorporated policies, including its Privacy Policy (collectively the "Terms"), expressly obtain consent from Twitter users for the conduct alleged here.

The Terms make clear that Plaintiff's "public user profile information and public Tweets are immediately delivered via SMS and our APIs to our partners and other third parties, including search engines, developers, and publishers that integrate Twitter content into their services . . . ."  Plaintiff consented to the use of his public information through the API and thus has not stated a claim upon which relief can be granted.

Finally, the application of the Alabama Right of Publicity Act in this case would violate the First Amendment by chilling protected speech.  Plaintiff's publicly available profile information allegedly appeared on Hey's Famous mobile app which allowed its users to express themselves by, among other things, "investing" "hearts" in a person, competing for the status of being a person's "NO. 1 FAN," and commenting on people's profiles.  Plaintiff offers no compelling reason why this Court should curb such speech by imposing liability for actions that he himself authorized.

In short, Plaintiff's claim against Twitter suffers from incurable defects and should be dismissed with prejudice.

## II.    STATEMENT OF FACTS

### A.    Twitter

Twitter is a global platform for public self-expression and conversation in real time.  Twitter's mission is to give everyone the power to create and share ideas and information instantly without barriers.  The service can be accessed at Twitter.com and on a variety of mobile devices, and enables users to send and read short 140-character messages called "Tweets."  Twitter has over three hundred million monthly active users who Tweet five hundred million times a day.[1]

Only users with a registered Twitter account can post Tweets.  When creating an account, a Twitter user is required to provide a name and username and may upload an account profile photo (collectively the Twitter user's "profile") all of which are viewable by the general public.  (Declaration of Ricardo Castro in Support of Defendant Twitter, Inc.'s Motion to Dismiss Plaintiff's Complaint ("Castro Decl.") Ex. G, at 2.)  Names, usernames, and profile photos need not be real and, indeed, many Twitter accounts are pseudonyms or parody accounts. Anyone, with or without a Twitter

---

[1] https://about.twitter.com/company; http://www.internetlivestats.com/twitter-statistics/.

account, can view the profile of any Twitter user, including that user's name, username, and profile photo, on Twitter's platform or on third-party websites that host content originally uploaded to Twitter. (*See id.*)

Twitter provides access to the publicly available information posted on its site, including public Tweets and users' names, usernames, and profile photos, to third parties through a number of APIs. (Compl. ¶ 2.)  APIs are commonly used tools that allow third-party developers to use Twitter's publicly available information to offer services on those third-party developers' websites and apps. These third parties may use this information to then provide other services to users, such as analyzing Twitter conversations about real-world events or measuring Twitter activity and trends.

### B.     Twitter's Terms of Service and Privacy Policy

To register an account with Twitter, a user must agree to Twitter's Terms of Service.  (Castro Decl. Exs. A, B.)[2]  The TOS incorporates and links to Twitter's Privacy Policy, and makes clear that "[a]ny information that you or other users provide to Twitter is subject to our Privacy Policy, which governs our collection and use of your information. You understand that through your use of the Services you consent to the collection and use (as set forth in the Privacy Policy) of this information . . . ." (*Id.* Ex. F, at 3.)[3]

At the time Plaintiff signed up for Twitter, in May 2008 (*see* Compl. ¶ 43), he accepted Twitter's TOS and agreed to be bound by any subsequent modifications.  (Castro Decl. Ex. C, at 1 ("We reserve the right to alter these Terms of Use at any time.  If the alterations constitute a material change to the Terms of Use, we will notify you via internet mail according to the preference expressed

---

[2] Concurrently with this Motion, Twitter has filed a Request for Consideration of Documents Incorporated into the Complaint and, in the Alternative, for Judicial Notice, asking the Court to consider documents critical to Plaintiff's claim, including, among other things, Twitter's TOS and Privacy Policy.  Notably, the same law firm representing Plaintiff here, before this Court last year, filed a complaint against Twitter, in which the plaintiff there, a registered Twitter user, expressly conceded that he had agreed to Twitter's TOS and Privacy Policy.  (*See* Amended Complaint ¶ 14, *Raney v. Twitter*, Case No. 3:15-cv-04191-WHA (N.D. Cal. Sept. 14, 2015), ECF No. 23.)  Plaintiff in that case dismissed his complaint with prejudice before the Court had an opportunity to rule on Twitter's motion to dismiss.

[3] The text "Privacy Policy" appears as a link in the TOS that users can click to access that policy.  (*Id.*)

1  on your account.  What constitutes a 'material change' will be determined at our sole discretion, in

2  good faith and using common sense and reasonable judgement [sic].").)

3          The TOS in place during the relevant time period informs users that publicly viewable content

4  submitted to Twitter will also be shared with third parties for use in external applications.  (*Id*. Ex. F,

5  at 2 ("Most Content you submit, post, or display through the Twitter Services is public by default and

6  will be able to be viewed by other users and through third party services and websites.").)  Moreover,

7  the TOS requires users to grant Twitter a license to use and distribute Content to third-party app

8  developers like Hey:

9          You agree that this license includes the right for Twitter . . . **to make Content submitted
10          to or through the Services available to other companies, organizations or individuals
           who partner with Twitter** for the syndication, broadcast, distribution or publication of
11          such Content on other media and services, subject to our terms and conditions for such
           Content use.
12

13  (*Id*., at 4 (emphasis added).)  Further, the Privacy Policy in place during the relevant time period, and

14  incorporated into the TOS, is explicit that user-submitted, publicly viewable content is shared with

15  third parties, including via Twitter's APIs:

16          The Twitter Services broadly and instantly disseminate your public information to a
17          wide range of users, customers, and services. For instance, your public user profile
           information and public Tweets are immediately delivered via SMS and our APIs to our
18          partners and other third parties, including search engines, developers, and publishers
           that integrate Twitter content into their services . . . .
19

20  (*Id*. Ex. G, at 3.)

21          **C.      Hey and Its App "Famous: The Celebrity Twitter"**

22          Defendant Hey was a mobile app development company.  (Compl. ¶ 19.)  In or around

23  February 2016, Hey developed an app called "Famous: The Celebrity Twitter." [4]        (*Id*.

24

---

25  [4] Although Plaintiff references another former Hey app, "Stolen" (*id*. ¶ 22), he concedes that he did
    not find his name and photograph in Hey's app until July 21, 2016 (*id*. ¶ 44), by which point Stolen
26  no longer existed.  Indeed, Plaintiff admits that Hey shut down the Stolen app "[s]hortly after" January
    14, 2016, and released the new app, "Famous" in or around February 2016.  (*Id*. ¶¶ 33-35.)  Plaintiff
27  never alleges that any indicia of his identity were used in Stolen, and, accordingly, Stolen is not
    properly part of his claim.
28

¶¶ 35-36.)  Using Twitter users' publicly available information obtained through Twitter's API (*id.* ¶¶ 2, 24), Hey created profile cards for Twitter users.  (*Id.* ¶ 36; Declaration of Karen L. Burhans in Support of Defendant Twitter, Inc.'s Motion to Dismiss Plaintiff's Complaint ("Burhans Decl.") ¶ 3.)  Similar to baseball cards, each profile card included a user's name, username, and profile photo. (Compl. ¶ 36; Burhans Decl. ¶ 3.)  Famous users could "invest" in a particular Twitter user's profile by giving "hearts."  (Compl. ¶ 37; Burhans Decl. ¶ 5.)  Once a Famous user "invested" in a profile card, that Famous user became the "NO. 1 FAN" of that profile until he or she was displaced by another Famous user with more "hearts."  (Burhans Decl. ¶ 6.)  Famous users could also comment directly on profile cards.  (*Id.* ¶ 4.)  A true and correct copy of a screenshot from Famous, is included below:



On September 29, 2016, Hey shut down Famous and its users could no longer access the app. (*Id.* ¶ 7.)  As of October 2016, Hey has ceased operations and is liquidating its business.  (*Id.* ¶ 9; *id.* Ex. 1.)

### D.    Plaintiff's Complaint

Plaintiff Jason Parker alleges that he is an Alabama resident who began using Twitter in May 2008.  (Compl. ¶¶ 8, 43.)  While Plaintiff claims that, on July 21, 2016, he discovered that his "name and personal photograph" were included in a profile card on Famous, he alleges no injury or damages

1    from the alleged conduct. (*Id.* ¶ 44.) Plaintiff alleges that Hey's use of his "name and personal

2    photograph" in Famous without his consent constitutes a violation of the Alabama Right of Publicity

3    Act (*id.* ¶¶ 57-60), and that Twitter has further violated the Act by "causing its users' identities,

4    including their names and pictures, to be used in the App" by providing Hey access to Twitter's APIs.

5    (*Id.* ¶¶ 62-63.) Plaintiff brings individual claims—one against Twitter and one against Hey—as well

6    as class claims on behalf of a putative class of "Alabama residents whose (i) Twitter profiles appear

7    or have appeared in the App (ii) without their consent." (*Id.* ¶ 46.)

8    **III.    ARGUMENT**

9        **A.    Plaintiff Lacks Article III Standing**

10       Under Rule 12(b)(1), a court must dismiss claims where a plaintiff has failed to establish

11   standing under Article III of the U.S. Constitution. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000);

12   *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998). Article III limits federal

13   jurisdiction to "cases and controversies" in which a plaintiff has suffered "injury in fact" that is "actual

14   or imminent," "fairly traceable" to the defendant's actions, and likely to "be redressed by a favorable

15   decision." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 202

16   (2000). Here, the Court should dismiss the Complaint under Rule 12(b)(1) because Plaintiff lacks

17   standing for his claims.

18       Under Article III, a plaintiff does not automatically satisfy the "injury-in-fact requirement

19   whenever a statute grants a person a statutory right and purports to authorize that person to sue to

20   vindicate that right." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("*Spokeo*"). Rather,

21   "*Article III standing requires a concrete injury even in the context of a statutory violation.*" *Id.*

22   (emphasis added). The injury must "be '*de facto*'; that is, it must actually exist." *Id.* at 1548. Thus,

23   courts must carefully examine complaints for allegations of mere technical violations of statutes that

24   do not result in any harm. *See, e.g.*, *McCollough v. Smarte Carte, Inc.*, No. 16 C 03777, 2016 WL

25   4077108, at *3 (N.D. Ill. Aug. 1, 2016) ("While it is a technical violation of [the state law at issue],

26   McCollough does not allege any harm that resulted from the violation."); *Supply Pro Sorbents, LLC*

27   *v. Ringcentral, Inc.*, 2016 WL 5870111, at *3 (N.D. Cal., 2016) ("Plaintiff merely identifies its injury

28   as the alleged statutory infraction. That is insufficient for the purpose of alleging Article III

standing"); *Gubala v. Time Warner Cable, Inc.*, No. 15-CV-1078-PP, 2016 WL 3390415, at *4 (E.D. Wis. June 17, 2016) ("But there are no allegations in the thirteen pages of the second amended complaint showing that the plaintiff has suffered a concrete injury as a result of the defendant's retaining his personally identifiable information.").

The Complaint does not allege that Plaintiff suffered *any* injury of any kind and does not explain how Twitter's alleged conduct caused Plaintiff any concrete harm. Plaintiff does not allege that he was injured economically. He does not allege, for example, that he lost any money as a result of Twitter's conduct; that he is unable to market his endorsement in a way he could before; or that he has lost some other commercial value in his identity. Nor does he allege that he suffered any other tangible harm. While it is true that some intangible harms can serve for standing purposes, and that legislatures can "elevate" certain intangible harms by passing statutes designed to protect against those harms, *Spokeo* 136 S. Ct. at 1549-50, Plaintiff does not allege an intangible harm of any kind, let alone one the right of publicity was designed to protect against. *See Minnifield v. Ashcraft*, 903 So. 2d 818, 824 (Ala. Civ. App. 2004) (noting that the right of publicity specifically protects economic interests connected to identity).[5]

Merely alleging a violation of the Act will not suffice, because, just as in *Spokeo*, there are any number of technical violations of the Act that would not result in any concrete harm the statute was designed to protect (a harm to the commercial value of identity), or any concrete harm *at all*.[6] Nor can a concrete injury be inferred from the facts alleged here. Given that the name, username, and profile photo a Twitter user puts into her profile are publicly available, it is "difficult to imagine" how the use of Plaintiff's name or image on Famous alone results in any concrete harm, of a commercial

---

[5] While this case predates the Act, the Act's drafters noted that the Act repeals only those aspects of the common law inconsistent with its language. Alabama Law Institute, *Right of Publicity Act with Commentary*, at 2 (available at: http://ali.state.al.us/documents/ROPbooklet.pdf).

[6] For example, there are websites that simply list Twitter accounts by user name, which would violate the Act under Plaintiff's theory of liability. *See, e.g.*, Friend or Follow (available at: http://friendorfollow.com/twitter/most-followers/); *cf.* Restatement (Second) of Torts § 652C (1977) (comment d) ("No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation.").

1    (or any other) nature. *Spokeo* 136 S. Ct. at 1550. Plaintiff's failure to allege an injury in fact mandates

2    dismissal with prejudice.[7]

3    **B.    Plaintiff's Complaint Fails to State a Claim for Relief Against Twitter**

4    A court must dismiss claims under Rule 12(b)(6) when "there is no cognizable legal theory or

5    an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250

6    F.3d 729, 732 (9th Cir. 2001). The Court need not accept as true "allegations that are merely

7    conclusory, unwarranted, deductions of fact, or unreasonable inferences," *In re Gilead Scis. Litig.,*

8    *Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008), and is "free to ignore legal conclusions, unsupported

9    conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual

10    allegations." *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1064 (E.D.

11    Cal. 2011).

12    The Complaint fails to state a claim upon which relief can be granted for three reasons. First,

13    Plaintiff's claim is defeated by the Communications Decency Act § 230. Second, Plaintiff consented

14    to the conduct he alleges makes Twitter liable. Third, Plaintiff's claim is barred by the First

15    Amendment. For each of these reasons, Plaintiff's claim should be dismissed.

16    **1.    Communications Decency Act § 230 Precludes Plaintiff's Claim**

17    Section 230 of the Communications Decency Act states that "[n]o provider or user of an

18    interactive computer service shall be treated as the publisher or speaker of any information provided

19    by another information content provider" and preempts all state laws to the contrary. *Evans v. Hewlett-*

20    *Packard Co.*, No. C 13-02477 WHA, 2013 WL 5594717, at *2 (N.D. Cal. Oct. 10, 2013) (finding state

21

22    [7] Further, Plaintiff's requests for injunctive relief are moot because Hey shut down Famous on September 29, 2016 and has entered liquidation proceedings. (Burhans Decl. ¶¶ 7-9.) A claim for relief becomes moot, and must be dismissed, where "subsequent events ma[ke] it absolutely clear that

23    the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528

24    U.S. at 189. Because Hey is no longer operational (Burhans Decl. ¶¶ 7-9), it is "absolutely clear" that Hey will not be able to reinstate Famous and, therefore, the conduct of which Plaintiff complains "could not reasonably be expected to recur." *See United States v. Cathcart*, No. C 07-4762 PJH, 2009

25    WL 3103652, at *2 (N.D. Cal. Sept. 22, 2009) (dismissing claim as moot where defendant was in the

26    process of liquidation). In deciding a Rule 12(b)(1) motion regarding its subject matter jurisdiction, the Court may consider evidence outside of the complaint, including evidence of Hey's dissolution.

27    *Vieira v. Woodford*, No. C 00-0043 PJH, 2002 WL 1226852, at *1 (N.D. Cal. May 30, 2002) (citing

28    *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)).

law claims "preempted by the CDA") (Alsup, J.); *Joude v. WordPress Found.*, No. C 14-01656 LB, 2014 WL 3107441, at *7 (N.D. Cal. July 3, 2014) (holding right-of-publicity claim "precluded by CDA § 230"). As this Court has observed, CDA § 230 "establish[es] broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Evans*, 2013 WL 5594717, at *2 (quoting *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007)). This immunity bars Plaintiff's claims.

The Ninth Circuit has set out three elements for CDA preemption: "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009). Twitter qualifies here under each of these elements, and Plaintiff's claim should accordingly be dismissed. *Evans*, 2013 WL 5594717, at *3 (dismissing a right-of-publicity claim because CDA § 230 barred liability).

**Interactive Computer Service**. The term "interactive computer service" is interpreted "expansive[ly]." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122-23 (9th Cir. 2003). The Ninth Circuit has observed that "[t]oday, the most common interactive computer services are websites." *E.g.*, *Fair Hous. Council of San Fernando Valley v. Roommates.Com*, LLC, 521 F.3d 1157, 1162 n.6 (9th Cir. 2008). Plaintiff concedes that Twitter is a website and online social network. (Compl. ¶¶ 24, 43.) Twitter thus readily qualifies as an interactive computer service.[8]

**Publisher Liability**. In determining whether a claim treats a defendant as a publisher, courts have applied the term publisher broadly. *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016) ("The broad construction accorded to section 230 as a whole has resulted in a capacious conception of what it means to treat a website operator as the publisher or speaker of information provided by a third party."); *Barnes*, 570 F.3d at 1101 ("[M]any causes of action might be premised on the publication or speaking of what one might call 'information content.'"). This expansive application follows from the Congressional intent behind CDA § 230 "to promote the continued

---

[8] The court in *Fields v. Twitter, Inc.* found Twitter was protected by CDA § 230, implicitly holding Twitter is an interactive computer service. No. 16-CV-00213-WHO, 2016 WL 4205687, at *4 (N.D. Cal. Aug. 10, 2016) ("Plaintiffs do not dispute that Twitter is an interactive computer service.").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

DEF. TWITTER, INC.'S MOT. TO DISMISS
NO. 3:16-CV-04884 WHA

1 development of the Internet and other interactive services" and "to preserve the vibrant and

2 competitive free market that presently exists for the Internet and other interactive computer services,

3 unfettered by Federal or State regulation." *Evans*, 2013 WL 5594717, at *2 (citing 47 U.S.C.

4 § 230(b)(1)-(2)).

5       Here, the Complaint alleges that Twitter should be liable because it "disclosed" user-generated

6 content (Compl. ¶ 24), "provid[ed] the data" through its APIs (*id.* ¶ 38), and "suppl[ied]" (*id.* ¶ 68) the

7 content that Hey then used to create cards on Famous. These are nothing more than allegations of

8 publication. *See*, *e.g.*, Merriam-Webster, "Publish" (available at http://www.merriam-

9 webster.com/dictionary/publish) (defining publish as, *inter alia*, "to disseminate to the public" and "to

10 produce or release for distribution"); *see also Barnes*, 570 F.3d at 1103 (finding that plaintiff could

11 not escape CDA preemption by simply renaming "an action that is quintessentially that of a

12 publisher"). Twitter is alleged to have published, or, in other words, to have disseminated or

13 distributed, user-generated content through its APIs. CDA § 230 plainly applies here.

14       The Complaint also suggests that Twitter is liable because of decisions it made regarding who

15 could use its API—that is, that Twitter did not appropriately police users of the API such as Hey, who

16 republish Twitter content. (Compl. ¶¶ 64-68 (alleging that Twitter could have denied Hey access to

17 user-generated content).) But courts have found that a website acts as a publisher when it decides who

18 can access user-generated content, even where the plaintiff is the party that generated the content in

19 the first place. In fact, courts have found that CDA immunity protects websites where the allegations

20 of access concern far graver issues than those here, i.e., where predatory adults were alleged to have

21 been given access to content created by minors. In *Doe v. MySpace, Inc.*, 528 F.3d 413, 416 (5th Cir.

22 2008) ("*MySpace I*"), for example, plaintiff alleged MySpace was liable not for publishing content

23 generated by plaintiff (a minor), but for failing "to implement basic safety measures" to stop adults

24 from accessing minors' posted content through the platform. The Fifth Circuit rejected this argument,

25 noting that plaintiffs' "allegations are merely another way of claiming that MySpace was liable for

26 publishing the communications and they speak to MySpace's role as a publisher of online third-party-

27 generated content." *Id.* at 420. The California Court of Appeal came to the same conclusion soon

28 after in *Doe II v. MySpace Inc.,* 175 Cal. App. 4th 561, 573 (2009) ("*MySpace II*"). Plaintiffs alleged,

Cooley LLP
Attorneys At Law
San Francisco

11.

Def. Twitter, Inc.'s Mot. to Dismiss
No. 3:16-CV-04884 WHA

among other things, that MySpace should have used different privacy settings and changed its search functions to prevent adults from viewing content created by minors.  *Id.* at 565.  The court rejected Appellants' argument that they did "not allege liability on account of MySpace's exercise of a publisher's traditional editorial functions," finding "that is precisely what they allege; that is, they want MySpace to ensure that [those adults] do not gain access to (i.e., communicate with) minors on its Web site."  *Id.* at 573 (internal quotation marks omitted); *see also Beckman v. Match.com*, No. 2:13-CV-97 JCM NJK, 2013 WL 2355512, at *4 (D. Nev. May 29, 2013), *aff'd in part, rev'd in part on other grounds*, No. 13-16324, 2016 WL 4572383 (9th Cir. Sept. 1, 2016) (finding that CDA § 230 blocked liability for alleged failure to prevent criminals from accessing plaintiff's account content).  But that is the conduct that Plaintiff asserts Twitter is liable for—the alleged failure to regulate Hey's access to published user content.  (Compl. ¶ 65 ("Had Twitter revoked access to its API, Hey's violation of Plaintiff and the Class's publicity rights would have immediately stopped.").)  Put simply, the decision who to publish to is the decision of a publisher, and Plaintiff's creative pleadings do not avoid this outcome.

**Information Content Provider**.  The information at issue here, Twitter users' names and photographs, was not Twitter-generated but was generated by "another information content provider"—namely, Twitter users themselves.  (*See* Compl. ¶ 43.)  The Complaint does not allege that Twitter influences or alters this content in any way that would render Twitter an information content provider.[9]  *See Carafano*, 339 F.3d at 1124 (holding that a dating site could not be liable because it did not develop the posted content); *Fair Hous. Council of San Fernando Valley*, 521 F.3d at 1172 (finding "neutral tools" that allow users to generate content do not make a website a developer).[10]

---

[9] In *Fair Housing Council of San Fernando Valley*, the Ninth Circuit explained that not only must a defendant have "developed" content to lose immunity, but it must have "materially contribut[ed] to its alleged unlawfulness."  521 F.3d at 1167–68.

[10] This Court and others have also found that although a defendant exerts some control over app developers through developer agreements, it does not make the defendant a developer of the app's content.  *Evans*, 2013 WL 5594717, at *4 ("Plaintiffs' proposed pleading would allege 26 ways in which defendants exercised control over the app . . . .  The third party still provided the published content and defendants only provided the editorial parameters."); *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 983 (N.D. Cal. 2015) (finding Amazon and Google's provision of guidelines and

Cooley LLP
Attorneys At Law
San Francisco

12.

Def. Twitter, Inc.'s Mot. to Dismiss
No. 3:16-cv-04884 WHA

As the elements of CDA § 230 immunity are met, Plaintiff's claim should be dismissed.

### 2.    Plaintiff Consented to Twitter's Disclosure of His Information to Hey

Plaintiff cannot establish a required element of his claims because he consented to the very acts of which he now complains.  To state a claim under the Act, a plaintiff must allege the absence of consent.  Alabama Code 1975 § 6-5-772 (imposing liability for "use of the indicia of identity of a person . . . for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise or services . . . without consent . . . .").  Alabama's related common law claim requires pleading absence of consent, *see Minnifield*, 903 So. 2d at 824, and, as discussed above, the Act repeals only those aspects of prior common law inconsistent with its language.  (*See supra* at 8 n.6.)  An individual may contractually consent to the use of his or her name and likeness.  *See Bell v. Birmingham Broad. Co.*, 266 Ala. 266, 269 (1957) (recognizing that rights regarding the use of one's identity may be waived by contract).

Plaintiff agreed to Twitter's TOS and Privacy Policy,[11]  which plainly disclose that the public information users provide to Twitter, including their names, Twitter usernames, and profile

---

"technical assistance" to app developers did not make those companies developers of the apps' content).

[11] In order to use Twitter's services, Plaintiff had to agree to Twitter's TOS.  (*See* Castro Decl. Exs. A, B; *see also* Ex. F, at 1 ("Your access to and use of the Services are conditioned on your acceptance of and compliance with these Terms.  By accessing or using the Services you agree to be bound by these Terms.")); *see also Wingo v. Twitter, Inc.*, No. 14-2643, 2014 WL 7013826, at *3 (W.D. Tenn. Dec. 12, 2014) ("[Plaintiff] alleges that he is a Twitter user, and as such he agreed to Twitter's Terms of Service when he initially registered to use Twitter and each time he accessed the service after registration.").  In so agreeing, Plaintiff consented to Twitter's reservation of "the right to alter these Terms of Use at any time."  (Castro Decl. Ex. C, at 1.)  The TOS further stated: "[i]f the alterations constitute a material change to the Terms of Use, we will notify you via internet mail according to the preference expressed on your account.  What constitutes a 'material change' will be determined at our sole discretion, in good faith and using common sense and reasonable judgement [sic]."  (*Id*.)  Twitter provided advance notice of the relevant modifications to the TOS and Privacy Policy discussed herein via email to users, a Tweet about the change from Twitter's own company account, and a notice on the then-current TOS that a new TOS and Privacy Policy would become effective in 30 days.  (*Id*. ¶¶ 7-9.)  Plaintiff continued to use Twitter after this notice, and thereby manifested his assent to the operative version of the TOS and Privacy Policy.  *E.g.*, *In re Facebook Biometric Info. Privacy Litig.*, No. 15-CV-03747-JD, 2016 WL 2593853, at *8 (N.D. Cal. May 5, 2016) (notice of change in terms provided by email and notification on the individual's Facebook newsfeed, coupled with user's continued use of the site, was sufficient for notice and assent to modified terms); *cf. Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 803 (1998) (acknowledging that provision in agreement allowing change

Cooley LLP
Attorneys At Law
San Francisco

13.

Def. Twitter, Inc.'s Mot. to Dismiss
No. 3:16-CV-04884 WHA

photographs, will be shared with third-party app developers such as Hey via Twitter's APIs.  (Castro

Decl. Ex. G, at 3.)  Indeed, Twitter's Privacy Policy provides that:

> The Twitter Services broadly and instantly disseminate your public information to a wide range of users, customers, and services. For instance, *your public user profile information and public Tweets are immediately delivered via SMS and our APIs to our partners and other third parties, including search engines, developers, and publishers that integrate Twitter content into their services* . . . .

(*Id*. (emphasis added).)   While this disclosure alone establishes Plaintiff's consent, Twitter's TOS

further informs users that:

> Most Content you submit, post, or display through the Twitter Services is *public by default and will be able to be viewed by other users and through third party services and websites*.

(*Id*. Ex. F, at 2 (emphasis added).)  Users also grant Twitter a license to use and distribute their

Content to third-party app developers like Hey:

> You agree that this license includes *the right for Twitter . . . to make Content submitted to or through the Services available to other companies, organizations or individuals who partner with Twitter* for the syndication, broadcast, distribution or publication of such Content on other media and services, subject to our terms and conditions for such Content use.

(*Id*., at 4 (emphasis added).)[12]   Therefore, by using Twitter, Plaintiff consented to Twitter's disclosure

of his user profile information—including his name and picture—to third-party app developers via

Twitter's APIs.  Plaintiff's right-of-publicity claim against Twitter must therefore be dismissed.

---

of terms permitted company to modify terms). The relevant version of the TOS to which Plaintiff agreed also linked to, and incorporated by reference, Twitter's Privacy Policy.  (Castro Decl. Ex. F, at 1.)  Accordingly, Plaintiff also agreed to the Privacy Policy.  *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 998 (N.D. Cal. 2012) ("parties may validly incorporate by reference into their contract the terms of another document.") (quoting *Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748 (1994)).

[12] The Court may disregard Plaintiff's allegations that he did not consent to Twitter's disclosure of information via its APIs because "the Court need not accept as true any allegations contradicted by 'matters properly subject to judicial notice or by exhibit'" such as Twitter's TOS and Privacy Policy. *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015), *appeal dismissed* (June 29, 2015) (quoting *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

DEF. TWITTER, INC.'S MOT. TO DISMISS
NO. 3:16-CV-04884 WHA

### 3.    The First Amendment Bars Plaintiff's Right-of-Publicity Claim

Courts have long balanced right-of-publicity claims against First Amendment considerations. *See, e.g.*, *Zacchini v. Scripps-Howard Broad.*, 433 U.S. 562 (1977); *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180 (2001).   Where the speech at issue is entitled to First Amendment protection, courts have permitted the right-of-publicity claim to proceed only when allowing the claim under the statute would serve a compelling state interest that overrides the First Amendment interest.   *Sarver v. Chartier*, 813 F.3d 891, 903 (9th Cir. 2016).   As applied to Plaintiff's claim, the Act regulates speech that is protected by the First Amendment.   And because Alabama has no compelling interest in regulating the speech at issue in this case, Plaintiff's claims are barred by the First Amendment.

### a.    Plaintiff's Claim Infringes on Constitutionally Protected Speech

Famous itself—which Plaintiff alleges was an "online trading game"—is protected speech. (Compl. ¶ 1.)   "[T]here is no question that 'video games qualify for First Amendment protection.'"   *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1273 (9th Cir. 2013) (quoting *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 789-91 (2011)).   The same result should follow here because "[l]ike the protected books, plays, and movies that preceded them," and like video games, mobile game apps like Famous "communicate ideas—and even social messages . . . ."   *Entm't Merchs. Ass'n*, 564 U.S. at 790; *see also C.B.C. Distribution & Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818, 823 (8th Cir. 2007) (finding that use of players' names and information in fantasy baseball games constitutes speech because "pictures, graphic design, concept art, [among other features] in video games" constitute speech entitled to First Amendment protection).

Famous users also engaged in protected speech through gameplay in at least three distinct ways.   First, Plaintiff concedes that Famous's gameplay centered on a user's ability to "invest" "hearts" in a profile of their choosing.   (*See* Compl. ¶¶ 36-37.)   Hearts are a well-known symbol for expressing love or approval; thus, the very act of investing them in a profile expresses the user's affinity for that profile.   *See Bland v. Roberts*, 730 F.3d 368, 385–86 (4th Cir. 2013), *as amended* (Sept. 23, 2013) ("liking" a post or profile on Facebook is a "substantive statement" protected by the First Amendment).   Second, a user could "invest[]" in a profile for the right to be identified as that individual or entity's "NO. 1 FAN," a title that conveys a clear message.   (Burhans Decl. ¶ 6.)   Third,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

DEF. TWITTER, INC.'S MOT. TO DISMISS
NO. 3:16-CV-04884 WHA

1  users could express themselves in the comment section for each profile.  (*Id.* ¶ 4); *see Bernard v.*

2  *Donat*, No. 11-cv-03414-RMW, 2012 WL 525533, at *3 (N.D. Cal. Feb. 16, 2012) (holding that

3  comments on a website are protected speech).  In each of these ways, Famous provided a platform that

4  enabled protected speech.

5                       **b.**     **There is No Compelling Interest in Regulating the Speech at Issue**

6                              **Here**

7       When dealing with protected speech, the Ninth Circuit has subordinated First Amendment

8  protection to the right of publicity only in narrow circumstances: where the speech at issue (1)

9  "appropriates the economic value of a performance or persona"; or (2) "seeks to capitalize off a

10  celebrity's image in commercial advertisements"; or (3) where there is an otherwise compelling reason

11  for the state to regulate the speech at issue.  *Sarver*, 813 F.3d at 905 (explaining that right-of-publicity

12  laws are content-based restrictions that are presumptively unconstitutional as applied to protected

13  speech).  Plaintiff's claim does not fall into any of these three categories.  Plaintiff fails to allege that

14  there is any economic value in his name or likeness, or that Twitter or Hey used his name or likeness

15  in a manner that interfered with his own ability to capitalize on that economic value.  And Plaintiff

16  fails to allege that he is a celebrity, or that his image was used in a "commercial advertisement."[13]

17       Moreover, Plaintiff has not pled, nor can he demonstrate, any other compelling interest in

18  allowing his right-of-publicity claim to proceed in light of the First Amendment considerations here.

19  First, the state has little interest in protecting Plaintiff's name and likeness on Twitter, which have

20  always been publicly available with Plaintiff's consent.  (*See* Compl. ¶ 23 ("The core gameplay

21  essentially sucks in all of the available public data from Twitter . . . .").)  "No one has the right to

22  object merely because his name or his appearance is brought before the public, since neither is in any

---

23  [13] At most, Plaintiff alleges that Hey had an economic motivation for creating Famous.  But the mere

24  "economic motivation" for speech is "clearly . . . insufficient by itself to turn the materials [in question] into commercial speech."  *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983); *Dex Media*

25  *W., Inc. v. City of Seattle*, 696 F.3d 952, 960 (9th Cir. 2012).  Famous is not commercial speech because it did more than propose a commercial transaction, indeed, Plaintiff concedes that users could

26  engage with the app without spending any money whatsoever.  *Dex Media*, 696 F.3d at 958; (*see* Compl. ¶ 26 ("To 'buy' a listed person, the App required players to have sufficient funds in their

27  accounts.  The funds in this case are virtual credits.  The App gave away a limited amount of these

28  virtual credits to users for free . . . .").)

way a private matter and both are open to public observation."  Restatement (Second) of Torts § 652C (1977) (comment d).  Indeed, in *C.B.C. Distribution*, the Eighth Circuit held that "it would be a strange law that a person would not have a first amendment right to use information that is available to everyone."  505 F.3d at 823.  In that case, the court found that use of professional baseball players' names and statistics in a fantasy baseball game—which allowed users to "draft" real-life players onto their fantasy team in order to score points—was protected by the First Amendment against a right-of-publicity claim.  *Id*. at 824.  Similarly, here, Hey's use of publicly available names and images from Twitter to allow its users to express themselves by "investing" "hearts," to compete for the status of being a person's or entity's "NO. 1 FAN," and to comment on profiles does not justify overriding the First Amendment.  This is especially true where, as here, Plaintiff voluntarily signed up for Twitter and placed his name and photograph into the public domain.

Likewise, the use of Plaintiff's information does not infringe on traditional state interests in protecting an individual's economic interest in his or her identity through the creation of a right of publicity.  *See Zacchini*, 433 U.S. at 573-77.  In *Zacchini*, the Supreme Court recognized that a state's interests in permitting a right of publicity claim are "compensat[ing] the performer for the time and effort invested in his act," "preventing unjust enrichment by the theft of good will," and providing "an economic incentive for [a performer] to make the investment to produce a performance of interest to the public."  *Id*. at 576.  And, indeed, as discussed above, the Alabama Right of Publicity Act was enacted to protect "commercial" interests.  (*See supra* p. 8.)  Plaintiff, however, does not allege that there is any economic value in his name and likeness, let alone that the use of his name and photograph in the app somehow denies him that economic value.  (*See supra* p. 8.)  "[T]he value of the plaintiff's name is not appropriated by mere mention of it . . . nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity."  Restatement (Second) of Torts § 652C (1977) (comment d).  "The State has no interest in giving [Plaintiff] an economic incentive to live his life as he otherwise would."  *Sarver*, 813 F.3d at 905.  Accordingly, traditional state interests underlying the First Amendment are not present here.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17.

DEF. TWITTER, INC.'S MOT. TO DISMISS
NO. 3:16-CV-04884 WHA

1    If successful, Plaintiff's right-of-publicity claim would effectively stifle expressive, non-

2 commercial speech protected by the First Amendment.  As such, the claim must fail.  *See Esch v.*

3 *Universal Pictures Co.*, No. 6:09-CV-02258-JEO, 2010 WL 5600989, at *5 (N.D. Ala. Nov. 2, 2010)

4 (dismissing right-of-publicity claim for violating First Amendment); *Vijay v. Twentieth Century Fox*

5 *Film Corp.*, No. CV 14-5404 RSWL EX, 2014 WL 5460585, at *3–5 (C.D. Cal. Oct. 27, 2014) (same);

6 *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (same).

7    **C.    Plaintiff's Claim Should Be Dismissed With Prejudice**

8    "While Federal Rule of Civil Procedure 15(a) requires that leave to amend 'be freely given

9 when justice so requires,' leave to amend may be denied if an amendment would be futile or would be

10 subject to dismissal."  *McGlamry v. Transmeta Corp.*, No. C 04-02475 WHA, 2005 WL 2216951, at

11 *2 (N.D. Cal. July 25, 2005) (Alsup, J.) (quoting *Saul v. United States,* 928 F.2d 829, 843 (9th Cir.

12 1991)).  For all of the reasons discussed herein, Plaintiff's claim against Twitter under the Act cannot

13 survive under any set of facts.  Accordingly, the Court should grant Twitter's Motion to Dismiss with

14 prejudice.  *See*, *e.g.*, *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 824 (9th Cir.

15 2002) (dismissing initial complaint with prejudice for lack of Article III standing where it is "not

16 factually possible . . . to amend the complaint so as to satisfy the standing requirement"); *Lancaster v.*

17 *Alphabet Inc.*, No. 15-CV-05299-HSG, 2016 WL 3648608, at *3 (N.D. Cal. July 8, 2016) (dismissing

18 initial complaint with prejudice where claims barred by CDA § 230); *Daly*, 238 F. Supp. 2d at 1127

19 (dismissing with prejudice commercial appropriation claims barred by First Amendment).

20 **IV.    CONCLUSION**

21    For the foregoing reasons, the Complaint should be dismissed with prejudice.

22  Dated: November 2, 2016                 COOLEY LLP

23

24                                          */s/ Matthew D. Brown*
                                            Matthew D. Brown
25                                          Attorneys for Defendant TWITTER, INC.

26

27  138409626

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

DEF. TWITTER, INC.'S MOT. TO DISMISS
NO. 3:16-CV-04884 WHA